**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Dorothy JEFFERSON, Defendant-Appellant.**

No. 82–1463.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1983.

Decided July 22, 1983.

Rehearing Denied Jan. 16, 1984.

Michael J. Knoeller, Milwaukee, Wis., for defendant-appellant.

Barbara B. Berman, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and ASPEN, District Judge.*

ASPEN, District Judge.

Appellant Dorothy Jefferson was convicted by a jury of: (1) participation in a con-

* The Honorable Marvin E. Aspen, United States District Judge for the Northern District of Illinois, is sitting by designation.

spiracy to distribute controlled substances in violation of 21 U.S.C. § 846 (Count 1), (2) twenty-one counts of distribution of various controlled substances in violation of 21 U.S.C. § 841(a)(1) (Counts 2 through 11, 13 through 15 and 17 through 24), (3) two counts of the use of a communications facility to facilitate the distribution of controlled substances in violation of 21 U.S.C. § 843(b) (Counts 12 and 16), and (4) participation in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (Count 25). Her appeal alleges numerous errors at trial and sentencing.

### I.

The evidence at trial revealed an elaborate drug sales operation in Milwaukee, Wisconsin, based initially at 335 West Vine Street. During the time period encompassed by the conspiracy and continuing criminal enterprise allegations, the operation moved to 1822 North 22nd Street and then across the street to 1801 North 22nd Street. The initial location was a first floor apartment where customers exchanged cash for drugs through a window. The second location was an entire residence with a fortified door through which customers were admitted once they had identified themselves to the drug house employee serving as the door man. This drug house was operated around the clock with at least two or three employees on duty at all times. The final location was a carefully guarded residence with numerous employees working around the clock. Drugs were locked in a fortified room at the back of the residence. An employee situated inside the fortified room sold drugs through a slot in the door to customers admitted to the house by the door man.

Five witnesses at trial testified that they had worked at one or more of the drug houses, and that they had been hired and supervised by appellant and her husband, Frank Jefferson.[1] The evidence showed that appellant had played an active role in the organization and supervision of each of the drug houses. Appellant had made hiring, firing, and wage decisions and had been known to her employees as the "Queen Bee." She would call the operating drug house with regularity to check on the level of supplies, and if more drugs were needed she would have them sent over or would deliver them herself. Drugs had been stored at the Jefferson residence (2004–05 West Cherry Street) and, on occasion, at 2010 West Cherry Street, the home of a neighbor who was also charged in the indictment.

Searches pursuant to warrant were conducted of the drug house at 1801 North 22nd Street, appellant's residence, and the neighbor's residence. These searches resulted in seizures of large quantities of cash in small denominations and large collections of jewelry and fur coats. Prior to trial, the defendant moved to quash the warrants and suppress the evidence seized. After a hearing before a magistrate, the motions were denied and much of the seized evidence was eventually admitted at trial. The jury returned a verdict of guilty as to all counts after a two-week trial.

At the sentencing hearing, the trial judge initially sentenced appellant to 10 years on the continuing criminal enterprise count (21 U.S.C. § 848), 15 years on the conspiracy count (21 U.S.C. § 846) to run consecutive to the sentence imposed on the § 848 count, 5 years on one of the substantive drug offense counts (21 U.S.C. § 841(a)(1)) to run consecutive to the sentences imposed on the §§ 846 and 848 counts, and 5 years on each of the remaining counts (21 U.S.C. §§ 841(a)(1) and 843(b)) to run concurrent to each other and to the other sentences imposed. Expressly indicating that he wished to sentence appellant to a total of thirty years, he explained that he had chosen to spread the sentence over three counts rather than to impose thirty years on the § 848 count because § 848 contains a no-pa-

---

1. Frank Jefferson was also charged in each count of the twenty-five count indictment. Pursuant to a plea agreement, he pled guilty to Count 25 of the indictment (*i.e.,* continuing criminal enterprise in violation of 21 U.S.C. § 848) and was sentenced to thirty years to run concurrent to a sentence received in state court.

role provision that might work a hardship on appellant if her health problems worsened in prison.

Immediately after the sentencing, one of the attorneys for the government informed the trial judge of her belief that consecutive sentences on the §§ 846 and 848 counts were improper. The sentencing hearing was reconvened three hours later, and the trial judge resentenced appellant to 10 years on the § 848 count, 5 years on the § 846 count to run concurrent to the sentence imposed on the § 848 count, 5 years on each of four of the substantive counts to run consecutive to each other and to the sentence imposed on the § 848 count, and 3 years on each of the remaining 19 counts to run concurrent to each other and to the other sentences.

Appellant challenges the admission of certain evidence seized in the searches, the sufficiency of the evidence with respect to her conviction of specific counts, certain jury instructions and the manner and substance of sentencing.

## II.

■ Appellant first argues that the trial court erred in admitting items seized in searches conducted on December 31, 1980, and March 24, 1981. She contends that because officers entered the houses without knocking, the searches violated 18 U.S.C. § 3109 and the Fourth Amendment.[2] We note at the outset that this objection was not raised before or during the trial.[3] Unless the objection speaks to serious and harmful error of constitutional magnitude, appellant's failure to object at trial precludes the assignment of error on appeal.

*United States v. Cook,* 432 F.2d 1093, 1103 (7th Cir.1970).

## A.

On December 31, 1980, a search of the drug house at 1801 North 22nd Street was conducted by state officers executing a state search warrant. A state search is governed by state law as long as the law applied does not violate the Fourth Amendment. *Ker v. State of California,* 374 U.S. 23, 34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963). Wisconsin state law authorizes the use of "all necessary force" in the execution of search warrants. Wis.Stat.Ann. 968.14. This provision has been construed to permit no-knock entry where justified on the facts of the case. *See, e.g., State v. Suits,* 73 Wis.2d 352, 243 N.W.2d 206 (1976).

■ In granting the application for a warrant, the state court judge stated:

> The nature of the premises with that barricaded door off the kitchen and people with guns on the premises indicate that there is only one practicable way to have this search warrant effectuated, and that is a "no-knock" way. There's also apparently people on the street watching for the police. There's lookouts.[4]

As a result of this finding, the warrant expressly provided that "entry may be made without knocking or prior identification."[5] Thus, we conclude that the warrant did not violate Wisconsin state law.

We next turn to the question of whether the warrant abridged constitutional rights. As the Supreme Court has stated, "[i]t is well established that law officers constitutionally may break and enter to execute a search warrant where such entry is the only means by which the warrant effectively

---

**2.** 18 U.S.C. § 3109 provides:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

**3.** Before trial, defense counsel challenged the admission of certain evidence from the

searches of December 31, 1980, and March 24, 1981, but the no-knock issue was not raised. After a suppression hearing before a magistrate, defense contentions that the scope of the warrants had been exceeded and that probable cause did not support the issuance of the March 24, 1981, warrants were rejected.

**4.** Brief of Plaintiff-Appellee, Appendix I at 16.

**5.** Transcript of Record Item 5, Exhibit 1.

may be executed." *Dalia v. United States,* 441 U.S. 238, 247, 99 S.Ct. 1682, 1688, 60 L.Ed.2d 177 (1979) (citations omitted). Evidence adduced at the suppression hearing and at trial supports the conclusion of the state judge who issued the warrant that the entry and search could not have been effected without a no-knock entry. The building searched on December 31, 1980, was not a typical residence. It was a heavily barricaded, closely guarded business enterprise where large amounts of drugs, money and jewelry were stored and exchanged. A danger of destruction of evidence existed. The prior drughouse, *i.e.,* 1822 North 22nd Street, had been searched pursuant to warrant on August 14, 1980. The employees at 1801 North 22nd Street were thus alert to the possibility of police searches. Indeed, by the time the officers gained access to the building, the employees were apparently disposing of drugs. We conclude that appellant's constitutional rights were not violated during the search of December 31, 1980.[6]

### B.

■ Appellant's contention that the search of March 24, 1981, was effected by a no-knock entry in violation of 18 U.S.C. § 3109 is not supported by the record. The March 24, 1981, search of appellant's residence was executed pursuant to warrant by both federal and state officials. Michael Ebert, one of the federal officials taking part in the search, testified at the evidentiary hearing that the officers knocked at the door, identified themselves and their purpose and requested entry. A man who could be seen behind the door refused to answer. Only after a second request for entry was ignored was entry effected by break-in.[7] The March 24, 1981, entry complied with the clear language of § 3109.

### III.

With respect to the search of March 24, 1981, appellant reiterates an objection that was raised and rejected prior to trial. *See* note 3, *supra.* She contends that the search exceeded the scope of the warrant in that items not named in the warrant were seized.

The federally-issued warrant authorized the search of premises located at 2004–06 West Cherry Street for certain controlled substances "and records of drug dealing activity and currency."[8] In the course of the search, the specified controlled substances were found and seized along with approximately $23,000 cash in small bills, five fur coats, 142 articles of jewelry, nine firearms and assorted documents and photographs. Much of this evidence was introduced at trial.

■ When a police officer conducting a valid search inadvertently comes across an article not specified in the warrant, but one nevertheless having an incriminating character, it is well established that he may seize that article as well as any others that are specified in the warrant. *Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971); *United States v. Graham,* 638 F.2d 1111, 1115 (7th Cir.), *cert. denied,* 450 U.S. 1034, 101 S.Ct. 1748, 68 L.Ed.2d 231 (1981); *United States v. Schire,* 586 F.2d 15, 17 (7th Cir.1978). The question here, then, is whether the seized items not specified in the warrant (*i.e.,* the fur coats, jewelry and firearms) were of an apparently incriminating nature.

■ It is, of course, conceivable that the furs and jewelry were legitimately held for personal use, and that the firearms were held for sporting purposes. In the context of executing a search warrant that contemplated an extensive drug distribution opera-

---

**6.** The cases cited by appellant are inapposite. In *United States v. Likas,* 448 F.2d 607 (7th Cir.1971), a state warrant was issued and officials executing the warrant broke into defendant's apartment with a sledgehammer. The Court held the search unlawful because there were no circumstances shown that would justi-

fy such an entry. In *United States v. Case,* 435 F.2d 766 (7th Cir.1970), a no-knock search without warrant was held unlawful.

**7.** Evidentiary Tr. at 40.

**8.** Transcript of Record Item 6, Exhibit 1.

tion, however, the officers logically concluded that the furs and jewelry were fruits of the illegal operation tantamount to cash receipts. Where a logical nexus exists between seized but unnamed items and those items listed in the warrant, the unnamed articles are admissible. *United States v. Gentry,* 642 F.2d 385, 387 (10th Cir.1981). Even if the items were not received as currency in the drug operation, the circumstances reasonably alerted the officers to the possibility that the items were fruits of another illegal activity. *See United States v. Golay,* 502 F.2d 182, 185 (8th Cir.1974). Given the criminal nature of the drug operation contemplated by the warrant, the seized firearms were likewise apparently incriminating and thus admissible.

■ Appellant raises the same argument with respect to items seized in the search of December 31, 1980. The warrant for that search authorized seizure of the controlled substance Ritalin and "related paraphernalia."[9] Officers executing the warrant seized Ritalin as well as numerous other controlled substances and $223 in small bills. Again, given the warrant's contemplation of a drug distribution operation, it can hardly be said that unnamed controlled substances and cash receipts were not apparently incriminating.

### IV.

Appellant next contends that items seized on March 6, 1980, and January 13, 1981, were improperly admitted into evidence because a complete chain of custody as to each exhibit was not established at trial. Here again, no objection was made to the admission of these items at trial. Failure to object to the admissibility of evidence at trial ordinarily precludes the assignment of error on appeal unless harmful error of constitutional magnitude was committed. Fed.R.Evid. 103(d); *United States v. Cook,* 432 F.2d at 1103; *United States v. Millpax, Inc.,* 313 F.2d 152, 156 (7th Cir.1963). On review of the record, we conclude that no error was committed.

■ Before a physical exhibit is admitted into evidence at trial, there must be a showing that it is in substantially the same condition as when the crime was committed. This determination is to be made by the trial judge and may not be overturned except for a clear abuse of discretion. *United States v. Aviles,* 623 F.2d 1192, 1197 (7th Cir.1980); *United States v. Bridges,* 499 F.2d 179, 185 (7th Cir.), *cert. denied,* 419 U.S. 1010, 95 S.Ct. 330, 42 L.Ed.2d 284 (1974).

Exhibit 26–2 consisted of a sealed bag containing blank prescription pads and thousands of tablets identified as controlled substances in various bottles and bags. Detective William Matson of the Milwaukee Police Department testified at trial that while conducting a search pursuant to warrant of 2010 West Cherry Street on March 6, 1980, he found an attache case (Exhibit 26–1) filled with the pills and prescription pads comprising Exhibit 26–2. (Trial Tr. 392). Detective Matson testified that he took the attache case and its contents to the Detective Bureau, where they were inventoried and documented. The attache case and contents were then taken by Detective Matson to the Vice Squad, where they were kept under lock and key until March 20, 1980. Matson then took the evidence to the Property Bureau, where it remained until removed by Matson for the trial. At the close of the direct examination of Detective Matson, Exhibit 26–2 was received into evidence without objection. (Trial Tr. 399).

Exhibit 24–5 consisted of a sealed plastic bag with several sections. The bag contained hypodermic needles, syringes, various pills and tablets identified as controlled substances and empty pill containers. Detective John Randa of the Milwaukee Police Department's Vice Squad testified that he seized these items while conducting a search pursuant to warrant of 1801 North 22nd Street on January 13, 1981. Randa further testified that he placed these items in a large plastic envelope, sealed the envelope, put it in a paper bag and locked the bag in a Vice Squad vault. The bag was later sent

---

**9.** Transcript of Record Item 5, Exhibit 1.

to the Wisconsin State Regional Crime Lab for analysis and then returned to the Vice Squad where it remained until trial. Exhibit 24–5 was admitted into evidence during Detective Randa's testimony without objection. (Trial Tr. 534).

■ Appellant now contends that the chain of custody proven at trial for each of these exhibits was incomplete, giving rise to a question of whether or not the exhibits admitted into evidence at trial contained the actual items seized. This objection is technical at best. Appellant offers no reason as to why different items may have been substituted for the originals while the evidence was being held at the Vice Squad, the Property Bureau or the Crime Lab, nor does she suggest that any tampering with the exhibits actually occurred. Although the government concedes that perfect chains of custody were not established at trial, alleged gaps in a chain of custody go to the weight of the evidence rather than its admissibility. *United States v. Lampson,* 627 F.2d 62, 65 (7th Cir.1980). *See generally,* Giannelli, *Chain of Custody and the Handling of Real Evidence,* 20 Am. Crim.L.Rev. 527, 546 (1983). Moreover, the exhibits were at all times in official custody, and a presumption of regularity attends the discharge of official duties. *Aviles,* 623 F.2d at 1198. We conclude that the trial judge did not abuse his discretion in admitting Exhibits 26–2 and 24–5 into evidence, and that no error even approaching constitutional magnitude was committed.

## V.

■ Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if it is "offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." Before a co-conspirator's statement is admissible as non-hearsay, the trial judge must determine by a preponderance of the evidence that the following four conditions have been met:

(1) that there was a conspiracy,

(2) that the declarant was a member of the conspiracy,

(3) that the defendant was a member of the conspiracy, and

(4) that the statement was made in furtherance of the conspiracy.

*United States v. Shelton,* 669 F.2d 446, 465 (7th Cir.), *cert. denied,* 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 454 (1982); *United States v. Santiago,* 582 F.2d 1128, 1131 (7th Cir.1978). The evidence used by the government to establish the conspiracy must be nonhearsay and independent of the statements the government wishes to have admitted after the conspiracy is established. *United States v. West,* 670 F.2d 675, 684 (7th Cir.), *cert. denied,* 457 U.S. 1124, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982).

Among the government's witnesses at trial were several employees of the drug houses whose testimony included statements by alleged co-conspirators made during the period of the conspiracy and offered as incriminating evidence against appellant. Appellant challenges the district court's admission of these statements.

### A.

First, appellant's appellate counsel asserts in his brief and contended at oral argument that in the early stages of the trial, the trial court, over objection and in the presence of the jury, made findings of a conspiracy and implied that appellant was a member of the conspiracy. He cites three pages of the transcript that allegedly reflect this error.[10]

Counsel's reading of the transcript is patently erroneous. At Trial Tr. 192, defense counsel objected to testimony that related a statement of Frank Jefferson as to why the drug house was moved to a new location. The government responded that the statement was in the course of and in furtherance of the conspiracy, and the court allowed the statement to be received.[11] Simi-

---

**10.** Appellant's counsel cites Trial Tr. 192, 222 and 343.

**11.** The transcript reads in relevant part:

larly, an objection was made to testimony at Trial Tr. 222 relating a conversation between two drug house workers. Upon the government's response that the conversation was in the course of and in furtherance of the conspiracy, the court overruled the objection.[12] At Trial Tr. 343, defense counsel objected to testimony as relating to events occurring before the time period of the alleged conspiracy. The court overruled the objection and received the testimony on the condition that subsequent evidence would place the subject matter of the testimony in the relevant time period.[13]

At none of these points did the trial court in the presence of the jury make a finding of a conspiracy or imply that appellant was a co-conspirator. At each point the court in effect allowed a co-conspirator's statement to be received conditioned upon a subsequent finding that a conspiracy existed. This Court has held that alleged co-conspirators' statements may be admitted before a conspiracy is found, subject to the trial judge subsequently declaring a mistrial or giving a cautionary instruction if the conspiracy showing is not made. *United States v. Clark*, 649 F.2d 534, 539 (7th Cir.1981); San-

tiago, 580 F.2d at 1131. *See also United States v. Nicosia*, 638 F.2d 970, 974 (7th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981). We conclude that in this case, the trial court's conditional admission of co-conspirators' statements prior to its finding of a conspiracy was proper. We also admonish appellant's counsel for making factual assertions on appeal that simply cannot be supported on review of the trial transcript. Such conduct is inexcusable and highly unprofessional.[14]

### B.

At the close of its case, the government moved outside the presence of the jury that "the court make a specific finding that the government has proven to the standard of a preponderance of the evidence that a conspiracy existed and that the hearsay statements admitted during the course of the government's case were properly admissible." (Trial Tr. 783–84). The following day, after permitting defense counsel time to review the transcript and to respond, the trial judge granted the government's motion. (Trial Tr. Vol. V–A, at 2).[15]

Q [by government counsel]: Where were you when Frank Jefferson told you you were going to move to a new location?
A [by witness Arthur Lee Tipton]: I was at 1822 North 22nd.
Q: Did he tell you why you were to move to a new location?
A: It was for—
MR. GIMBEL [for the defense]: That's objected to as hearsay relative to the defendant.
MR. BOHL [for the government]: Your Honor, I think it's clearly within the course of the conspiracy. And in furtherance of the conspiracy.
THE COURT: All right. It will be received.
Trial Tr. 192.

**12.** The transcript reads in relevant part:
Q [by the government]: What did you tell him?
A [by witness Tipton]: I told him that I had been—was tired and I had give the package to Libby.
Q: What did he say?
MR. GIMBEL [for the defense]: I'm going to object to any testimony between he and Wide Receiver as hearsay.
MR. BOHL [for the government]: Your Honor, I think that's very clearly during the

course of the conspiracy and in furtherance of the conspiracy by one of the conspirators.
THE COURT: Overruled.
Trial Tr. 222.

**13.** The transcript reads in relevant part:
MR. GIMBEL [for the defense]: Your Honor, again I'll object to anything that occurred in the early part of '79.
THE COURT: I think it's beyond the scope of the time period. But I don't want—you know, how does it relate to this?
MS. BERMAN [for the government]: I believe, Your Honor,—do you want these arguments in front of the jury.
THE COURT: No. If you think it is, I'll take your representation, and if it isn't, we'll strike it. But is it?
MS. BERMAN: Yes, Your Honor.
THE COURT: All right. You may proceed. Under those conditions.
Trial Tr. 343.

**14.** Jefferson's counsel on appeal was not Jefferson's counsel at trial.

**15.** In granting the motion, the court stated:
I believe the record does indicate the government has established independent evidence,

■ Appellant contends that the trial court's finding of a conspiracy was premature because co-conspirators' statements were received contemporaneously with independent evidence of the conspiracy, and because the finding was made before the defense presented evidence.[16] As discussed above, co-conspirators' statements may be admitted contemporaneously with independent evidence establishing the conspiracy. *Santiago*, 582 F.2d at 1131. "The order of proof is a matter almost wholly within the discretion of the trial judge." *Clark*, 649 F.2d at 539. Upon extensive review of the entire trial record, we concur with the conclusion of the trial court that ample independent, non-hearsay evidence of a conspiracy was presented by the government. The finding of a conspiracy, as well as the timing of such finding, was well within the sound discretion of the trial court.[17]

## VI.

Appellant raises several objections to her conviction of two counts under 21 U.S.C. § 843(b) for use of a communication facility to facilitate the commission of a felony under the Comprehensive Drug Abuse, Prevention and Control Act of 1970.[18]

## A.

The trial court instructed the jury that in order to convict defendant of § 843(b), it had to find that the government had proven three essential elements:

One, that a communications facility was used. Two, that it was used in committing or in causing or facilitating the commission of a violation of that provision of law prohibiting the distribution or possession with intent to distribute of the controlled substances [sic], Ritalin, Talwin or Dilaudid. Third, that the acts are [sic] knowingly and intentionally performed.

(Trial Tr. 900–901). The judge went on to instruct the jury with respect to the continuing criminal enterprise and conspiracy counts and further instructed them as follows with respect to the substantive offenses:

If you find that she is guilty of conspiracy as charged in count one, you may also find her guilty of a substantive offense as charged in any other count of the indictment provided that you find that the essential elements of that count as defined in these instructions have been established beyond a reasonable doubt, and provided that you also find beyond a reasonable doubt the following: First, that the offense defined in the substantive count was committed pursuant to the conspiracy. Two, that the particular defendant was a member of the conspiracy at the time the substantive offense was committed. Under the conditions just defined, a defendant may be found guilty of a substantive count even though she

the establishment of the conspiracy [sic] and therefore it will be granted.
Trial Tr. Vol. V–A, at 3.

**16.** Here again, counsel's reading of the record is faulty. The transcript clearly indicates that the government had rested before it made its motion for a finding of conspiracy. Nonetheless, appellant's brief places the court's conspiracy finding of Trial Tr. Vol. V–A, at 2 "two-thirds of the way through the Government's case." Brief of Defendant-Appellant at 25. This misstatement to the Court—whether made intentionally or recklessly—is not professionally acceptable.

**17.** On the basis of the erroneous assertion that the trial court made a finding of conspiracy in the presence of the jury at Trial Tr. 192 and 222, appellant contends that the government's burden of proof on the § 848 count was thereby impermissibly diminished. Because we re-

ject the predicate assertion as untrue, we need not address this argument.

**18.** 21 U.S.C. § 843(b) provides:

It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or in facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this section, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.

did not participate in the acts constituting the offense as defined in the count. The reason for this is that a co-conspirator commiting [sic] a substantive offense pursuant to a conspiracy is held to be the agent of the other conspirators.

(Trial Tr. 903–904).

 Appellant contends that the § 843(b) instruction was deficient in that it did not indicate that to be found guilty, the defendant "must have participated in, exercised control over, or in any manner, directly or constructively, assented to the use of the telephone in the proscribed manner." (Brief of Defendant-Appellant at 42). This articulation, however, is not required when, as here, the trial court fully instructed the jury as to the elements necessary to establish a § 843(b) violation, which are (1) knowing or intentional (2) use of a telephone (3) to facilitate the commission of an offense. *United States v. Rey,* 641 F.2d 222, 224, n. 6 (5th Cir.), *cert. denied,* 454 U.S. 861, 102 S.Ct. 318, 70 L.Ed.2d 160 (1981). The § 843(b) instruction given by the trial court, especially when considered in conjunction with the general substantive offense instruction, adequately conveyed the elements of § 843(b) to the jury.

### B.

Appellant next contends that the evidence presented by the government was insufficient to send the § 843(b) counts to the jury. The relevant standard for appellate review of the sufficiency of the evidence to support a criminal conviction is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

 Appellant bases her sufficiency challenge on the theory that the testimony

regarding phone calls placed to appellant's residence could be construed as proving merely that appellant often answered the phone and immediately passed the phone to her husband without "facilitating" any offense herself. Such a limited interpretation of the testimony is not supported by a review of the transcript as a whole. Numerous drug house workers testified that appellant would often call to ask if more drugs were needed, and, if so, would soon arrive at the house with more supplies. Others testified that they would call the Jefferson residence and speak to appellant about the drug house operations. We conclude that the evidence presented by the government with respect to the § 843(b) counts was more than sufficient to send the counts to the jury and, indeed, to support the jury's guilty verdicts.

### C.

 Finally, appellant contends that § 843(b) is a conspiracy statute, violation of which is an inchoate crime, and that the court erred in instructing the jury that the § 843(b) counts were substantive offenses. The exact nature of appellant's objection is unclear. It is true, as appellant explains, that two people are generally required to complete a telephone call. However, this fact does not convert § 843(b) into a statute prohibiting conspiracies, nor does it change the elements of proof required.

It is also true, as appellant next points out, that the offense furthered by the use of the communication facility must be established by at least a preponderance of the evidence. *United States v. Rey,* 641 F.2d at 224, n. 6. *See also United States v. Watson,* 594 F.2d 1330, 1342–43 (10th Cir.), *cert. denied sub nom., Brown v. United States,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). This requirement raises no error here, for the jury found defendant guilty of each of the predicate offenses beyond a reasonable doubt.[19]

---

19. Count 11 charged appellant with possession and distribution of 50 tablets of Talwin on or about January 10, 1981, in violation of 21 U.S.C. § 841(a)(1). Count 12 charged appel-

lant under 21 U.S.C. § 843(b) with the use of a communication facility to further the offense charged in Count 11. Count 15 charged appellant with possession and distribution of 75 tab-

We need not reach the question of whether an inchoate offense may be the predicate offense for a § 843(b) conviction, *see, e.g., United States v. Rey,* 641 F.2d at 224, n. 6; *United States v. Thomas,* 586 F.2d 123, 130–31 (9th Cir.1978); *United States v. Pierorazio,* 578 F.2d 48, 51 (3d Cir.), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 652 (1978), since in this case the underlying offenses were substantive counts alleging unlawful possession and distribution under § 841(a)(1). Appellant contends without supporting authority that the trial court erred in failing to "delineate the scope or members" of the § 846 conspiracy and of the § 843(b) counts. We disagree. Ample evidence was presented by the government to support the § 843(b) convictions. We find no error in the court's submission of these counts to the jury, in the instructions accompanying them or in the guilty verdicts thereon.

### VII.

Appellant contends that the trial court committed error by submitting to the jury only an "all or nothing" verdict form upon which the jury could indicate that they found the defendant guilty or not guilty of all the counts charged in the indictment. No objection was raised by the defense at trial with respect to the verdict form(s) submitted to the jury.

 There is nothing in the record on appeal that shows precisely how many verdict forms were submitted to the jury.[20] Counsel for appellant, who was not trial counsel, bases his presumption that only one verdict form was submitted on the fact that the "all-or-nothing" form was the form ultimately used by the jury.[21] Counsel for the government, who was counsel at trial, stated at oral argument that as best she could recollect, multiple verdict forms (including the "all or nothing" form) were submitted to the jury. Our review of the trial court's instructions to the jury convinces us that in all likelihood, multiple forms were submitted to the jury, and, at any rate, the jury was well instructed as to its duty to consider each count separately.[22]

### VIII.

Appellant's final and most significant contentions arise under the Double Jeopardy Clause. She asserts that three aspects of the prosecution and sentencing placed her twice in jeopardy.

### A.

Appellant's principal double jeopardy objection arises from the cumulative sentences imposed on the continuing criminal enterprise count and four of the substantive counts.[23] She argues that because the jury may have used the offenses charged in those four counts as predicate offenses upon which the § 848 conviction for contin-

lets of Talwin on or about January 13, 1981, in violation of 21 U.S.C. § 841(a)(1). Count 16 charged appellant under 21 U.S.C. § 843(b) with the use of a communication facility to further the offense charged in Count 15. Appellant was found guilty on all four counts.

**20.** This oversight is unfortunate. The proper procedure would have been for trial counsel to make certain that copies of all verdict forms given to the jury were filed and thereby preserved for the record on appeal.

**21.** Brief of Defendant-Appellant, Appendix II.

**22.** The trial judge gave the following instruction to the jury:

Now you must consider each count separately in the indictment. You have to go through one count after another. You can't deal with the whole indictment as one package. You must divide it up. Because a separate crime or offense is charged in each count of the indictment. And each charge and the evidence pertaining to it should be considered by you separately. The fact that you may find her guilty, if you do, or not guilty, if you do, as to one of the offenses charged should not control your verdict as to any other offense charged.
Trial Tr. 896–97.

**23.** Appellant was sentenced to five years for each of Counts 3, 5, 7 and 10, to run consecutive to each other and to the sentence imposed on Count 25 (continuing criminal enterprise). Counts 3, 5, 7 and 10 each alleged possession with intent to distribute various amounts of specified controlled substances.

uing criminal enterprise was based,[24] cumulative punishment in effect placed her twice in jeopardy for the same offense.[25]

■ In *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), the Supreme Court considered the double jeopardy implications of multiple punishments imposed in a single criminal proceeding. Starting from the assumption that the Fifth Amendment protects "against multiple punishments for the same offense," *citing North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), the Court acknowledged "the basic principle that within our federal constitutional framework the legislative power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress." 445 U.S. at 689, 100 S.Ct. at 1436. Therefore, the Court concluded, the Double Jeopardy Clause in this context "at the very least precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so." *Id.* Under *Whalen,* the question of whether multiple punishments may be imposed for various statutory offenses is a question of statutory construction. *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *United States v. Phillips,* 640 F.2d 87 (7th Cir.1981).

In *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), the Supreme Court considered the question of whether Congress intended multiple punishments for continuing criminal enterprise under § 848 and conspiracy under § 846.[26] The Court concluded that § 848 "reflects a comprehensive penalty structure that leaves little opportunity for pyramiding of penalties from other sections of the Comprehensive Drug Abuse, Prevention and Control

**24.** 21 U.S.C. § 848 provides in relevant part:

(a)(1) Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years and which may be up to life imprisonment, to a fine of not more than $100,000, and to the forfeiture prescribed in paragraph (2); except that if any person engages in such activity after one or more prior convictions of him under this section have become final, he shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment, to a fine of not more than $200,000, and to the forfeiture prescribed in paragraph (2).

(2) Any person who is convicted under paragraph (1) of engaging in a continuing criminal enterprise shall forfeit to the United States—

(A) the profits obtained by him in such enterprise, and

(B) any of his interest in, claim against, or property or contractual rights of any kind affording a source of influence over, such enterprise.

(b) For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—

(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

(c) In the case of any sentence imposed under this section, imposition or execution of such sentence shall not be suspended, probation shall not be granted, and section 4202 of Title 18 and the Act of July 15, 1982 (D.C. Code, secs. 24–203 to 24–207), shall not apply.

**25.** Appellant further contends that § 846 may not serve as a predicate offense to a § 848 charge. Although we do not disagree, *see* note 27 *infra,* the contention is irrelevant to this case. Appellant's assertion that the jury could have predicated its § 848 finding on § 846 misreads the record. The trial judge explicitly instructed the jury that to find defendant guilty of § 848, they first had to find "that she committed at least three of the offenses charged in counts two through twenty-four of this indictment." (Trial Tr. 901–902.) Counts 2 through 24 alleged substantive offenses under §§ 841 and 843.

**26.** 21 U.S.C. § 846 provides:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

Act of 1970." 432 U.S. at 155, 97 S.Ct. at 2219.

In the instant appeal, the government urges us to limit the Supreme Court's holding in *Jeffers* to cumulative punishment imposed for § 846. Although we agree that § 846 stands in a different posture with respect to § 848 than do the substantive offense provisions of the Act,[27] we do not accept the analogy drawn by the government to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* RICO prohibits, *inter alia,* patterns of racketeering, and, like the continuing criminal enterprise offense, requires proof of the violation of substantive statutory prohibitions as predicate offenses. In *United States v. Hawkins,* 658 F.2d 279, 287 (5th Cir.1981), the Fifth Circuit held that Congress clearly intended to permit cumulative punishments for a RICO offense and its underlying predicate crimes. The government argues that, like the RICO punishment structure, Congress intended the § 848 scheme of punishment to supplement rather than supplant punishments for the predicate offenses.

An examination of the Congressional purposes underlying the two acts, however, undermines the government's contention. In enacting RICO, Congress designed sanctions against organized crime to serve as additional tools for the prevention of racketeering activity. *United States v. Rone,* 598 F.2d 564, 571 (9th Cir.1979), *cert. denied sub nom., Little v. United States,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). Congress stated its intent as follows:

It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence gathering process, by establishing *new penal prohibitions,* and by providing *enhanced sanctions and new remedies* to deal with the unlawful activities of those engaged in organized crime.

Congressional Statement of Findings and Purpose, Pub.L. 91–452 § 1, *as cited in Hawkins,* 658 F.2d at 287.

█ In contrast, the Comprehensive Drug Abuse, Prevention and Control Act of 1970 ("the Drug Act") was intended to replace the haphazard and incomplete statutory provisions for drug control then existing with a comprehensive scheme of drug control and enforcement. The purpose of the Drug Act was stated as follows:

This legislation is designed to deal in a comprehensive fashion with the growing menace of drug abuse in the United States (1) through providing authority for increased efforts in drug abuse prevention, (2) through providing more effective means for law enforcement aspects of drug abuse prevention and control, and (3) by providing for *an overall balanced scheme of criminal penalties* for offenses involving drugs.

H.R.Rep. No. 91–1444 (Part 1), 91st Cong., 2d Sess. 1 (1970), U.S.Code Cong. & Admin. News 1970, pp. 4566, 4567 (emphasis added). As described in the House Report's Summary of the Bill, "[t]he bill revises the entire structure of criminal penalties by providing a consistent method of treatment of all persons accused of violations." *Id.* at 4, U.S.Code Cong. & Admin.News 1970, p. 4570. Minimum penalties were eliminated on all substantive offenses in order to provide judges with discretion in sentencing individual offenders who may have been the "victims" of drug abuse. At the same time, Congress wished to provide a mechanism for harsh punishment of professional criminals involved in the sale and distribution of controlled substances. *See generally* 116 Cong.Rec. H33311–16 (September 23, 1970) (debate on H.R. 18583) and S.Rep. No. 91–613, 91st Cong., 1st Sess. 1–2 (1969).

█ Continuing criminal enterprise was originally introduced in debates on the early versions of the comprehensive drug bill as a method of sentence enhancement. Under the original concept, the judge could make a

---

27. *E.g.,* the substantive offenses may serve as predicate offenses for a conviction under § 848, while a conspiracy offense under § 846 may

not. *See United States v. Lurz,* 666 F.2d 69 (4th Cir.1981).

finding at the sentencing hearing upon a preponderance of the evidence that the crimes of which the defendant had been convicted were part of a continuing criminal enterprise. Once that finding was made, a much harsher punishment structure than the punishment scheme for individual substantive offenses applied. *See* 116 Cong.Rec. H33628–34 (September 24, 1970) (debate on amendment proposed by Rep. Poff) and S.Rep. No. 91–613, 91st Cong., 1st Sess. 27–28 (1969) (original recommendation with respect to continuing criminal enterprise). Due to concern that the elements of continuing criminal enterprise should be proven beyond a reasonable doubt at trial where the defendant is presumed innocent and given complete procedural safeguards, *see* 116 Cong.Rec. S1668–69 (January 28, 1970), the provision evolved into a separate offense under the Drug Act.

In light of the development of § 848 as the applicable sentencing structure for professional criminals, as well as express Congressional desire for a carefully structured penalty scheme, we conclude that Congress intended § 848 to serve as a comprehensive and exclusive penalty structure for persons professionally involved in criminal drug enterprises. Given the absence of a maximum available prison sentence under § 848, there is in fact no need for cumulative sentences to be imposed on the predicate offenses. *See United States v. Chagra,* 669 F.2d 241, 262 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 102, 74 L.Ed.2d 92 (1982). We therefore hold that cumulative sentences may not be imposed upon the predicate substantive offenses of a § 848 conviction. In the instant case, the imposition of cumulative sentences on Counts 3, 5, 7 and 10 violated appellant's rights under the Double Jeopardy Clause. Those sentences will be vacated.

### B.

Next, appellant contends that concurrent prosecution and conviction for conspiracy under § 846 and for continuing criminal enterprise under § 848 violated the Double Jeopardy Clause. Her challenge is premised on the contention that § 846 is a lesser-included offense of § 848, and she asks that her conviction and sentence under § 846 be vacated.

A defendant can be jointly tried on multiple narcotics charges arising from the same act or acts without raising a double jeopardy question, even if some of the alleged felonies are lesser-included offenses of the others. *Jeffers,* 432 U.S. at 153, 97 S.Ct. at 2217; *United States v. Blackston,* 547 F.Supp. 1200, 1208 (S.D.Ga.1982); *United States v. Holland,* 494 F.Supp. 918, 923 (D.Md.1980). The fact that appellant was concurrently *prosecuted* for both § 846 and § 848 presents no problem. If, however, § 846 is a lesser-included offense of § 848, the conviction and sentence imposed for the lesser-included offense must be vacated. *See United States v. Buckley,* 586 F.2d 498, 504–05 (5th Cir.), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1978); *United States v. Newman,* 468 F.2d 791, 796 (5th Cir.1972), *cert. denied,* 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973); *United States v. Rosenthal,* 454 F.2d 1252, 1255 (2d Cir.), *cert. denied,* 406 U.S. 931, 92 S.Ct. 1801, 32 L.Ed.2d 134 (1972).[28] To convict and impose punishment for both would be tantamount to twice convicting and punishing one defendant for a single offense, in violation of the Double Jeopardy Clause. *See Brown v. Ohio,* 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977). The question presented to us at this point, then, is whether § 846 is a lesser-included offense of § 848.[29]

A statutory prohibition is a lesser-included offense of another if proof of the greater

---

**28.** Because the five-year sentence imposed on § 846 would run concurrent to the ten-year sentence imposed on § 848, it is arguably unnecessary to vacate the § 846 conviction and sentence. As the Fifth Circuit noted in *Buckley,* however, a conviction—even without sentence imposed—is not "harmless" to the defendant. 586 F.2d at 505.

**29.** The government concurs in appellant's contention that § 846 is a lesser-included offense of § 848. Both parties somewhat inaccurately rely on *Jeffers* for this proposition.

In *Jeffers,* the relationship between §§ 846 and 848 was considered in a context different than that suggested by the parties in this case. Two indictments had been returned by a feder-

al grand jury against the defendant, one charging him with violations of § 846 and the other charging violations of § 848. The time period and predicate offenses alleged in the conspiracy indictment were the same as those alleged in the continuing criminal enterprise indictment. The trial court denied a motion by the government to consolidate the cases for trial, which had been opposed by defendant on the grounds that the parties charged in the two indictments differed and that much of the § 846 evidence would be inadmissible against him on the § 848 charge.

The trial on the § 846 indictment occurred first. Defendant was found guilty and was sentenced to five years and a $25,000 fine, the maximum applicable punishment under the statute. The defendant then filed a motion to dismiss the § 848 trial on the ground that he had already been placed in jeopardy for the same offense. He reasoned that both indictments arose from the same transactions, and that § 846 was a lesser-included offense of § 848 under the "same evidence rule" of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Thus, he argued, the second prosecution was barred by the Double Jeopardy Clause. The trial court accepted the government's contention that § 846 and § 848 were separate offenses and denied the motion to dismiss. At trial, defendant was found guilty and was sentenced to life imprisonment and the maximum applicable fine under the statute, to run consecutive to the sentence imposed on the conspiracy conviction.

On appeal to this Court, the conviction and sentence were affirmed. *United States v. Jeffers,* 532 F.2d 1101 (7th Cir.1976). In reaching its decision, the Court considered whether § 846 was a lesser-included offense of § 848 for double jeopardy purposes. (At the time the Court reached its decision, no other circuit had considered the issue. *See* 432 U.S. at 150, n. 15, 97 S.Ct. at 2215, n. 15.) The standard definition of a lesser-included offense, the Court noted, was that "all the elements of the offense must be included within the greater so that proof of the greater necessarily proves the lesser." *Id.* at 1106 (citations omitted). The Court then applied the definition to §§ 846 and 848 and concluded that conspiracy to distribute narcotics fell within the definition of a lesser-included offense of continuing criminal enterprise. *Id.* at 1106–07.

Whether or not the two sections were the "same offense" under the Double Jeopardy Clause was, in the Court's view, a different question. The Court reviewed the development of the test for assessing whether two statutory sections were the "same offense" for double jeopardy purposes. The original test was set forth by the Supreme Judicial Court of Massachusetts in *Morey v. Commonwealth,* 108 Mass. 433 (1871) and adopted by the Supreme Court in *Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911):

The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

108 Mass. at 434, *quoted at* 220 U.S. at 342, 31 S.Ct. at 422 and 532 F.2d at 1107. This test, as extended by *Blockburger,* meant that conviction of one offense barred subsequent prosecution for another included offense, and that a person could only be punished for one of a series of included offenses even if he was convicted of all the offenses at the same trial. 532 F.2d at 1107–1108.

The Court concluded, however, that in *Iannelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), the Supreme Court had formed a new double jeopardy approach toward complex statutory crimes. 532 F.2d at 1108. While the *Gavieres-Blockburger* test was appropriate for common law and simple statutory crimes, the Court inferred from *Iannelli* that with respect to highly complex statutory crimes (*i.e.,* running an illegal gambling business prohibited by 18 U.S.C. § 1955 as in *Iannelli* or a continuing criminal enterprise as in *Jeffers* ), the purposes underlying the statutory prohibitions control the question of whether the sections prohibit the "same offense." Under this approach, if the two complex statutes have different aims, they are not the same offense for double jeopardy purposes. Applying this approach to §§ 846 and 848, the Court concluded that conspiracy and continuing criminal enterprise were aimed at punishing different things and were thus separate offenses for double jeopardy purposes. Because §§ 846 and 848 were not the same offense, Jeffers' prior conviction on the former did not bar subsequent prosecution on the latter. His conviction was therefore affirmed. 532 F.2d at 1107, 1117.

The Supreme Court granted certiorari in *Jeffers* to consider the double jeopardy and multiple-punishment implications of his prosecutions under §§ 846 and 848. 429 U.S. 815, 97 S.Ct. 55 (1976). Rejecting the appellate court's interpretation and application of *Iannelli,* the Court reaffirmed the applicability of the *Gavieres-Blockburger* tests to all crimes, whether simple or complex:

*Brown v. Ohio,* decided today, establishes the general rule that the Double Jeopardy Clause prohibits a State or the Federal Government from trying a defendant for a greater offense after it has convicted him of a lesser included offense. What lies at the heart of the Double Jeopardy Clause is the prohibition against multiple prosecutions for "the same offense." *Brown* reaffirms the rule that one convicted of the greater offense

necessarily involves proof of the lesser. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911). *See* note 29, *supra.* Section 846 prohibits conspiracy to commit a substantive narcotics offense. Section 848 requires proof that the defendant engaged in a continuing series of substantive narcotics offenses *in concert with* five or more persons to whom the defendant acted as organizer, supervisor or manager.[30] The legislative history of § 848 (discussed *supra*) as well as the plain meaning of the words "in concert with" convince us that § 848 was meant to cover large-scale, continuing conspiracies to violate the drug laws. The provision as it developed through Congressional debate clearly contemplated sophisticated criminal drug distribution operations.[31] We reject the idea that such an operation could exist without "agreement" between at least the organizer

and the individuals supervised sufficient to satisfy the definition of conspiracy under § 846. Consequently, we conclude that § 846 was intended by Congress to be a lesser-included offense of § 848. *Accord, United States v. Sperling,* 560 F.2d 1050, 1055 (2d Cir.1977) ("We think it is too plain for cavil that to act 'in concert' to violate the law necessarily includes conspiracy to do so, and, hence, to prove the continuing criminal enterprise charge is to prove the conspiracy.") *See also United States v. Samuelson,* 697 F.2d 255, 259 (8th Cir.1983); *United States v. Lurz,* 666 F.2d 69, 75 (4th Cir.), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1981), *and United States v. Michel,* 588 F.2d 986, 1001 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979) (citing *Jeffers* for the proposition that § 846 is a lesser-included offense of § 848).

For these reasons, we hold that § 846 is a lesser-included offense of § 848. Appel-

---

may not be subjected to a second prosecution on the lesser offense, since that would be the equivalent of two trials for "the same offense." Because two offenses are "the same" for double jeopardy purposes unless each requires proof of an additional fact that the other does not, it follows that the sequence of the two trials for the greater and the lesser offense is immaterial, and trial on a greater offense after conviction on a lesser ordinarily is just as objectionable under the Double Jeopardy Clause as the reverse order of proceeding. Contrary to the suggestion of the Court of Appeals, *Iannelli* created no exception to these general jeopardy principles for complex statutory crimes.

432 U.S. 137, 150–51, 97 S.Ct. 2207, 2216 (footnotes and citations omitted). Expressly assuming *arguendo* that § 846 was a lesser included offense of § 848, the Court held that Jeffers had nonetheless waived his double jeopardy objection by opposing consolidation of the trials. 432 U.S. at 149–52, 97 S.Ct. at 2215–17. The *Jeffers* case therefore does *not* leave us with a holding that § 846 is a lesser-included offense of § 848 for double jeopardy purposes. It does, however, provide us with some guidance in analyzing the relationship between §§ 846 and 848.

**30.** When the appellate court considered the issue in *Jeffers,* it did not hesitate to define "to act in concert with" as meaning "to conspire":

The elements of a continuing criminal enterprise include, *inter alia,* that the accused en-

gaged in a continuing series of violations of the Controlled Substances Act which are taken *in concert with* five or more other persons with respect to whom the accused occupies some supervisory position. *Since a criminal enterprise charge requires proof that the accused acted in concert with five or more persons, it requires proof of a conspiracy....* Thus, the conspiracy charge under the standard definition is a lesser included offense of the continuing criminal enterprise charge. 532 F.2d at 1106–07 (emphasis added). The Supreme Court in *Jeffers* was unwilling to accept this definition outright. Instead, the Court observed that the "in concert" language "quite plausibly may be read" to mean an agreement such as is the essence of the crime of conspiracy. As it would be "unreasonable to assume that Congress did not mean anything at all when it inserted these critical words in § 848," it was "likely ... that Congress intended the word concert to have its common meaning of agreement in a design or plan." Without reaching a conclusion, the Court assumed *arguendo* for the purposes of the case "that § 848 does require proof of an agreement among the persons involved in the continuing criminal enterprise." 432 U.S. at 149–51, 97 S.Ct. at 2215.

**31.** For a helpful summary of the legislative history of the "in concert" requirement of § 848, as well as an examination of the use of the phrase "in concert" in other statutes, *see Jeffers,* 432 U.S. at 148, n. 14, 97 S.Ct. at 2215, n. 14.

lant's § 846 conviction and sentence will be vacated.

## C.

Finally, appellant contends that the Double Jeopardy Clause was violated when she was recalled by the trial judge and resentenced three hours after her original sentencing. Although no objection was made by defense counsel at the time, appellant's counsel on appeal urges that the resentencing was improper and constitutes plain error.

It is well settled that the Double Jeopardy Clause does not prohibit resentencing to correct a sentence entered illegally or erroneously where a defendant has not yet commenced service on his sentence. *E.g., United States v. Davidson,* 597 F.2d 230, 233 (10th Cir.), *cert. denied,* 444 U.S. 861, 100 S.Ct. 127, 62 L.Ed.2d 83 (1979); *United States v. DiLorenzo,* 429 F.2d 216, 221 (2d Cir.1970), *cert. denied,* 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971); *Williams v. United States,* 422 F.2d 1318 (5th Cir.1970). The record here is inconclusive as to whether appellant had been transferred from the court's custody to the custody of the attorney general at the time she was recalled for resentencing.[32] We do not view this factual question as material, however, for we hold that even if appellant had commenced service on her sentence, the Double Jeopardy Clause was not violated by the resentencing.

It was previously widely held that commencement of service of the sentence restricted the trial court's power to correct or amend a sentence. *See, e.g., United States v. Turner,* 518 F.2d 14 (7th Cir.1975); *United States v. Sacco,* 367 F.2d 368 (2d Cir. 1966). The premise underlying this rule was that a sentence, once imposed, was to be accorded the finality of a jury verdict and could not be increased without placing the defendant twice in jeopardy. The imposition of a sentence, it was reasoned, was tantamount to a verdict of acquittal on the possibility of greater punishment. Increasing the punishment placed the defendant twice in jeopardy with respect to the greater punishment. *See United States v. Benz,* 282 U.S. 304, 307, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1930).

In *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the Supreme Court rejected this reasoning and drew a distinction between a verdict of acquittal and the imposition of a sentence. Noting that there are many situations "under which the defendant is unaware of the precise extent of his punishment for significant periods of time, or even life," [33] the Court concluded that "[T]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." 101 S.Ct. at 437. Thus, the Court held, a defendant's sentence may be reviewed and increased after commencement of its service without violating the Double Jeopardy Clause. 101 S.Ct. at 435–37.

In light of this holding, we conclude that the trial court's power to modify a sentence is not necessarily terminated when service

---

**32.** Appellant's brief asserts that she was "in the process of being transported to prison in the custody of representatives of the Attorney General" when she was "recovered by U.S. Marshals and brought before the District Court." Appellant's Brief at 53. Unfortunately, like numerous other factual representations made to this Court by appellant's counsel, it is clearly not supported by anything in the trial record. Counsel for the government explained at oral argument that she, as trial counsel, had mentioned to the trial judge at the close of the original sentencing hearing her belief that the sentence was improper. Prior to her discussion with the judge, government counsel had informed the marshal that there might be a problem with the sentence and that the defendant might be recalled shortly for resentencing. The sentencing hearing adjourned at 11:25 a.m.; defendant was brought before the court for resentencing at 2:20 p.m. In light of the short time period between hearings and the fact that the marshal had been notified of the likelihood of resentencing, we hardly find it plausible that Jefferson had "commenced to serve" her sentence prior to resentencing.

**33.** The Court used as examples the possibility of revocation of probation or parole and the pendency of appeal of a guilty verdict. 101 S.Ct. at 437.

on the sentence is commenced. *Accord, United States v. Busic,* 639 F.2d 940, 948 (3d Cir.), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981). The resentencing in the instant case did not violate appellant's rights under the Double Jeopardy Clause.

### IX.

We are left with the question of whether we must simply vacate the sentences we have found improper and leave appellant to serve ten years on her § 848 conviction, or whether we may properly vacate *all* the sentences (including the unchallenged § 848 sentence) and remand the entire case for resentencing by the trial judge consistent with his original intentions. Although 28 U.S.C. § 2106 vests in us, *inter alia,* the supervisory power to vacate and remand the entire sentencing package despite the fact that it includes an unchallenged sentence, *see, e.g., Johnson v. United States,* 619 F.2d 366, 368 (5th Cir.1980), *and United States v. Moore,* 540 F.2d 1088, 1091 (D.C. Cir.1976), to do so would be futile unless the trial judge has discretion to increase appellant's § 848 sentence.[34]

As discussed *supra,* the rule in this and other circuits prior to *DiFrancesco* was that increasing a sentence once service had begun was prohibited as a violation of the guarantee against double jeopardy. *Turner,* 518 F.2d at 15–16. *Accord, e.g., United States v. Fredenburgh,* 602 F.2d 1143, 1147–48 (3d Cir.1979); *Sullens v. United States,* 409 F.2d 545, 547 (5th Cir.1969); *United States v. Sacco,* 367 F.2d at 369–70. No exception was made where the enhancement was for the purpose of carrying out

the intentions of the judge and fulfilling the expectations of the defendant. *Turner,* 518 F.2d at 16.

In light of *DiFrancesco,* however, it is necessary to abandon the rule of *Turner.* Where a sentence is held on appeal to be improper or illegal, it is not inconsistent with the Double Jeopardy Clause for a defendant to be resentenced upon remand according to the original intentions of the trial judge, even if this entails enhancement of one or more of the original sentences. *Accord, McClain v. United States,* 676 F.2d 915 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982); *United States v. Busic,* 639 F.2d 940 (3d Cir.), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981). Because the trial judge is vested with discretion to increase appellant's § 848 sentence, we will vacate and remand the entire sentence "package" for resentencing.

### X.

Appellant's § 846 conspiracy conviction and sentence on Count 1 are vacated. The remaining convictions are affirmed. The sentences imposed on Counts 2 through 25 are vacated and remanded for resentencing consistent with this opinion. It is so ordered.

---

**34.** At both the sentencing and resentencing hearings, the trial judge expressly stated that his intention was to give the defendant thirty years. Sentencing Tr. 20, 29. He explained that he had divided the sentence over the various counts because § 848 contains a no-parole provision, and he wanted to give the Department of Justice discretion to release the defendant after ten years if her health problems so required. He emphasized that this decision was made purely out of concern for defendant's poor health, and that he strongly believed that the defendant was a "very dangerous person"

and should not "be returned to the community at any time when she's able to supervise any type of activity on anyone's part." Sentencing Tr. 21.

Because a conviction on § 848 carries a minimum ten-year sentence, the judge is not empowered to effect his desire to impose an aggregate of thirty years by vacating the § 848 sentence and imposing sentences only on the substantive offenses. Thus, the trial judge may decide to satisfy his intent to sentence appellant to thirty years only by increasing her § 848 sentence.