UNITED STATES of America,
Plaintiff-Appellee,

v.

Leland L. SCHIRE, Defendant-Appellant.

No. 78–1200.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1978.

Decided Oct. 18, 1978.

Ralph A. Kalal, Madison, Wis., for defendant-appellant.

Grant C. Johnson, Asst. U. S. Atty., Madison, Wis., for plaintiff-appellee.

Before PELL, Circuit Judge, NICHOLS, Judge,* and SPRECHER, Circuit Judge.

NICHOLS, Judge.

Defendant was convicted for receiving and concealing a stolen brown 1975 Grand Prix automobile, in violation of 18 U.S.C. § 2313. The only issue on appeal is whether that Grand Prix was lawfully seized.

Police officers in Monona, Wisconsin were granted a search warrant allowing a search of Unit # 4 of the Syene Road warehouse for a silver Trans Am. The police also had arrest warrants for defendant Schire and one Joe Gervasi. The warrants were based on violations of state law—not the Federal offense litigated here—although the search was in part related to an F.B.I. and local

* Judge Philip Nichols, Jr., of the United States Court of Claims is sitting by designation.

police investigation of an auto theft ring, and Federal officers accompanied local police to the warehouse.

The police arrested Gervasi outside Unit # 4, and found defendant working on the Grand Prix inside Unit # 4. They arrested Schire, and saw but initially did not seize the Grand Prix. Moving into adjoining Unit # 3, (the legality of their entry is not an issue in this case), the police found the Trans Am. Information obtained from the tow truck driver summoned to tow the Trans Am away, and portions of other cars seen about the premises, revealed that the Grand Prix might also have been stolen. We gather that this was suspected to be an operation where stolen cars were transformed and made impossible to identify, by substitution of parts. The officers returned to Unit # 4 and seized the Grand Prix.

Appellant's theory is that the law enforcement officers made two searches of the warehouse. Schire argues that by finding the Trans Am and arresting the two suspects, the police fully executed the only warrants authorizing their entry. His theory implies that the officers should have turned on their heels and left Unit # 4 as soon as they effected the arrest and learned the silver Trans Am was not there. Any search or seizure subsequently made there was a "second search." He maintains that such a "second search" was illegal, as no warrant authorized it, and that the plain view doctrine could not justify seizure of items during the warrantless "second search."

The motion to suppress use of the Grand Prix as evidence was denied by the district court. We agree with that decision, rejecting appellant's argument as too narrowly defining the scope of the plain view doctrine.

■ In order for evidence seized during a search to qualify for the plain view exception to the warrant requirement, it has been said it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent. *United States v. Wilson*, 524 F.2d 595, 598 (8th Cir. 1975), *cert. denied*, 424 U.S. 945, 96 S.Ct. 1415, 47 L.Ed.2d 351 (1976). In *United States v. Cooks*, 493 F.2d 668 (7th Cir.), *cert. denied*, 420 U.S. 996, 95 S.Ct. 1437, 43 L.Ed.2d 679 (1974), this court held the plain view doctrine inapplicable to sustain a seizure, where the first two criteria were not met.

■ The activities of the police officers in this case meet all three criteria. Disposing of the easiest at once, the record indicates that the discovery was inadvertent, since police had no knowledge of the existence or location of the brown Grand Prix.

■ The first criterion—a lawful intrusion—is designed to insure that any official invasion of a citizen's property is made with a careful prior judicial determination of necessity (a warrant), or is pursuant to a recognized exception to the warrant requirement, such as "hot pursuit." We hold that only one "intrusion" was made in this case, and that it encompassed all the search activities of the police, including the later discovery of the Grand Prix's incriminatory nature and its seizure. This entire search was made legally, pursuant to the warrants issued.

■■ This court has stated that *searches* must end when the incriminating item listed in the warrant has been found. *United States v. Odland*, 502 F.2d 148, 153 (7th Cir.), *cert. denied*, 419 U.S. 1088, 95 S.Ct. 679, 42 L.Ed.2d 680 (1974). Thus, if police had to rummage through drawers or peer into closets to find the Grand Prix after the Trans Am was found, that subsequent search might be considered a "second search," and evidence found therein held inadmissible. But in this case, any such rummaging had stopped after the Trans Am was found, although police were still legally on the premises as they were supervising the towing of the Trans Am. While still legally there, they inadvertently discovered the probable relationship of the Grand Prix to defendant's activities, activities which were a feature of the very purpose of the warrant-authorized search, an auto

theft ring. The plain view doctrine does not require an additional warrant in this case; no further intrusions were made. The detour into Unit # 3 to search for the Trans Am is irrelevant to Schire's expectation of privacy in Unit # 4. Schire should have expected that Unit # 4 and the surrounding area (if public property) would be intruded upon by police officers, and for a reasonable period of time (until the Trans Am was towed). This is not a question of officers overextending the privileges of a limited search.

The United States Supreme Court dealt with a similar issue in *Michigan v. Tyler*, 436 U.S. 499, 509–10, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486 (1978). Firefighters and fire officials had entered a burning building about midnight on January 21–22, 1970. They put out the fire, which was entirely extinguished by 4 a. m. There were suspicious circumstances which could not be fully checked out until the smoke abated. Officials started their check at about 3:30 a. m., left at 4 a. m., and returned at 8 and 9 a. m. They did not ever have a warrant. The Supreme Court affirmed the reversal of the conviction because of further warrantless entries made after January 22, 1970, during which incriminating evidence was seized. It held that the "plain view" doctrine should be applied as if the firemen were police officers. The first entry, while the fire was blazing, was justified as "exigent." Later entries on January 22 were "an actual continuation" of the first one. The apparent view of the Michigan Supreme Court that the authority to search ended when the last blaze was extinguished, was deemed incorrect. The Supreme Court stated that officials could remain in or return to the building for a reasonable time to investigate the cause of the blaze, and seize evidence in plain view at that time. This reasonable time included a search made at 9 a. m., five hours after the fire was out, and after the burning building had twice been abandoned.

Appellant's theory as to limited time scope of the "plain view" doctrine and the early point at which a "search" becomes a "second search," is entirely out of harmony with this opinion of the Supreme Court. It may be noted that Part IV–A, containing the reasoning on which we rely, had the concurrence of a majority of the Court, and that it was more than dictum, since the case was to be retried. The Court's holding as to the illegality of searches after January 22 had to be limited to such searches for the decision not to be misunderstood.

■ Finally, the seizure also meets the criterion that the nature of the incriminating evidence becomes immediately apparent to authorities. The officers discovered the importance and probably contraband nature of the Grand Prix during the course of their search and on the searched premises. They did not need to take information back to headquarters, analyze it, or conduct an extensive search of the premises to recognize that the Grand Prix was incriminating evidence or contraband. *Compare United States v. Gray*, 484 F.2d 352 (6th Cir. 1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974), where the Sixth Circuit held that officers armed with a search warrant for illegally stored beer could not take down serial numbers of a rifle "in plain view," and later run through a check of serial numbers at the National Arms Information Center. Similarly, *United States v. Clark*, 531 F.2d 928 (8th Cir. 1976), refused to allow officers authorized to search for controlled substances to seize defendant's pistol (although in plain view) and later prosecute defendant for violation of firearms control laws. This required checking of the serial number and until that had been done, the contraband nature of the pistol was not "immediately apparent."

■ Obviously, the intent of this requirement, assuming it to be valid, is to prohibit law enforcement officers from using the pretext of "plain view" to conduct general inventory searches for items that may have a suspect character in a context or for reasons unknown to officers when they initiated their legitimate, limited search. But in the present case, when the officers were involved in investigating an auto theft ring, and a detective actually

stopped and checked the car's identification number when he first saw it, the nexus between the car and the investigation was "immediately apparent" if the exact nature of it still was not. *See United States v. Griffin*, 530 F.2d 739, 744 (7th Cir. 1976), where this court held that officers who were granted consensual entry into an apartment and saw mail strewn about it were entitled to seize the mail as in "plain view," refuting the defendant's argument that its evidentiary nature was not apparent without picking it up and closely examining it, since the officers were present on the scene due to a report of a stolen mailbag. We accept the present fact situation as meeting the requirements of "immediately apparent." We do not interpret the immediately apparent" requirement to connote apparent at first glance, but rather, apparent without other information than that which the officers properly possessed before their search was over. If even this is too strict a limitation on the "plain view" doctrine, it is not the appellant who is in a position to complain.

█ Appellant was not deprived of any fourth amendment protections in this case. The protection against unjustified intrusions was maintained—for the intrusion was authorized by a warrant. And the fourth amendment's shield against general warrants was upheld, for the discovery of the Grand Prix was inadvertent, and its incriminatory nature became immediately apparent during the course of the search.

AFFIRMED.