**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Martha REED, a/k/a Martha Burns,**
**Defendant-Appellant.**

No. 83–1237.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 3, 1984.

Decided Jan. 26, 1984.

Patrick S. Hart, Chicago, Ill., for defendant-appellant.

Thomas J. Scorza, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD, ESCHBACH, and POSNER, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant-appellant Martha Reed, also known as Martha Burns, appeals from her jury trial convictions on mail fraud and bank theft charges. She claims that the trial court erred by denying her a hearing on the veracity of the affidavit supporting the search warrant, and by denying her motion for suppression of evidence seized in the search which prompted the investigation leading to this prosecution. We affirm. To the extent that we treated the same issues in our recent opinion in the appeal of James W. McDonald, we rely on *United States v. McDonald,* 723 F.2d 1288 (7th Cir.1983).

## I.

Both this and the *McDonald* case arise from the events surrounding the issuance and execution of a search warrant naming one "James" and a Chicago apartment to be searched for cocaine and proof of residency. On June 5, 1979, Chicago police narcotics detective Robert Smith swore out an affidavit for a search warrant, stating that a reliable informant told him that "James" had offered the informant cocaine that morning in the named apartment, that the informant had used the cocaine, and that as he left the apartment the informant observed some cocaine remaining there. Upon execution of the search warrant that day, Detective Smith testified that immediately upon entry he observed some white powder and crushed plant. In the same room, a large artist's portfolio was on the floor, open to reveal a large quantity of envelopes addressed to various names and locations other than a "James" at this apartment. The search of the apartment revealed more cocaine in a manila envelope, two handguns, a gold bar and gold coins in a closet, and two typewriters and several typewriter balls with different type faces. The officers seized the drugs, the portfolio and its contents, the handguns, and the gold bar and coins.[1]

At the time of the search, appellant Martha Reed resided with McDonald at the Chicago apartment; he also resided with her at another Chicago address. The trial judge determined that Reed had standing to challenge the search and seizure. That ruling is not an issue on appeal.

Subsequent investigation revealed that McDonald and Reed were involved in a scheme which used stolen mail to defraud banks. Checks found in stolen purses and stolen mail were altered by matching the typewriter type and were negotiated through the theft victims' personal bank accounts. McDonald and appellant were charged with sixteen and eighteen counts,

respectively, of mail fraud, 18 U.S.C. § 1341, possession of stolen mail, 18 U.S.C. § 1708, bank theft, 18 U.S.C. § 2113, and interstate transportation of a stolen security, 18 U.S.C. § 2314. McDonald was found guilty on all counts in a jury trial before Judge Getzendanner; appellant was convicted on all counts in a jury trial before Judge Leighton. Each defendant sought a hearing on the veracity of the affidavit underlying the search warrant, and moved to suppress evidence seized in the search. Both judges denied the hearings and motions to suppress.

## II.

■ Appellant challenges the search warrant as based on an intentionally or recklessly falsified supporting affidavit. She contends that she has made the substantial preliminary showing upon which the fourth amendment requires a hearing to be held at her request. *See Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). To invalidate the warrant and exclude the fruits of the search, appellant would bear the burden of establishing by a preponderance of the evidence that the affiant included perjured statements or recklessly disregarded the truth in making the statements in the affidavit, and that without the affidavit's false material the remainder of the affidavit lacks probable cause to support the warrant. *Id.* at 156, 98 S.Ct. at 2676.

■ Appellant proposes to prove in a *Franks* hearing either that the informant could not have been in the apartment when he said he was, or that no informant existed. In her effort to make a preliminary showing, she called McDonald to testify as to the time he arrived at his apartment that morning, and the circumstances of the search. Judge Leighton found McDonald's testimony "incredible," and ruled that no substantial preliminary showing had been

1. Judge Leighton noted that McDonald testified at his own suppression hearing that he requested the police to take the gold bar into custody for safekeeping. *United States v. Reed,* No. 82 CR 411, slip op. at 8 (N.D.Ill. Dec. 22, 1982).

Detective Smith testified at appellant's suppression hearing that McDonald did not ask him to take the gold, but that his personal policy was to take valuables into custody for safekeeping.

made. *United States v. Reed,* No. 82 CR 411, slip op. at 4 (N.D.Ill. Dec. 22, 1982) (denial of motion to suppress).

In *McDonald,* we held that the *Franks* presumption of validity of an affidavit supporting a search warrant, *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684, cannot be overcome by a self-serving statement which purports to refute the affidavit. *McDonald,* at 1294. McDonald's testimony here, as in his own suppression hearing,[2] is insufficient to make the "*substantial* preliminary showing" that we required in *McDonald. See id.*

■ Appellant also argues that if an informant existed and gave police false information, Detective Smith included "reckless" falsifications in the affidavit because he did not verify the accuracy of the informant's statements. We do not find recklessness here. "Allegations of negligence or innocent mistake are insufficient." *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684. According to the affidavit, the informant, a source who had given police reliable information in the past, told Detective Smith only that a person named "James" was in the given apartment that morning and had offered the informant cocaine. That information was sufficiently descriptive, current, and of apparent reliability, so that police would not be required to verify the information prior to obtaining and executing a search warrant.

### III.

Appellant challenges the search warrant's object of "proof of residency" as unconstitutionally vague and overbroad. She contends that a search for "proof of residency" permitted police to seize items unrelated to residency, particularly, the many pieces of mail and other personal and financial papers bearing names and addresses other than that of a "James" at the given address. Detective Smith testified that he interpreted "proof of residency" to mean bills, receipts, or identification cards bearing an address.

■ A search warrant must describe the objects of the search with reasonable specificity, but need not be elaborately detailed. *United States v. Brock,* 667 F.2d 1311, 1322 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1271, 75 L.Ed.2d 493 (1983). *See also Andresen v. Maryland,* 427 U.S. 463, 479–82, 96 S.Ct. 2737, 2748–49, 49 L.Ed.2d 627 (1976). While warrants specifying seizure of business records evidencing a crime have been held overbroad when the particular records were not readily identifiable and police in fact seized all records, *see United States v. Abrams,* 615 F.2d 541 (1st Cir.1980); *United States v. White,* 541 F.Supp. 1181 (N.D.Ill.1982), a warrant search for proof of residency in conjunction with a search for other named contraband is sufficiently narrow for constitutional purposes. In the context of a search for contraband, police may need to determine who has possession of the premises and its contents. Proof of residency is easily recognizable, quickly found, and does not authorize a general search of personal papers.

■ Even if "proof of residency" as the object of a search were vague and overbroad, however, only that much of the June 5, 1979, warrant would fall. The search for cocaine would remain valid as stated with sufficient particularity and severable from any invalid search. *See, e.g., United States v. Cook,* 657 F.2d 730, 734–35 (5th Cir.1981). While a search for "proof of residency" may have sparked the officers' interest in the portfolio full of envelopes and papers, the search for cocaine equally could have prompted a look into the portfolio. A search for drugs justifies entry into containers where the drugs would fit and might reasonably be found. *See United States v. Ross,* 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170, 72 L.Ed.2d 572 (1982); *United States v. Wright,* 704 F.2d 420, 422–23 (8th Cir.1983). In fact some additional cocaine was found in a manila envelope in the apartment. Because the search for co-

---

**2.** In *McDonald,* one Ronald Nash also testified as to McDonald's whereabouts in the early morning hours of June 5, 1979.

caine was lawful, seizure of the other items may be analyzed under the plain view exception to the warrant requirement and need not be justified under the "proof of residency" part of the search warrant.

### IV.

Appellant lastly challenges the seizure of the mail, gold bar and gold coins, and two handguns, as beyond the scope of the search warrant and not coming within any exception to the warrant requirement. We first note that appellant's challenge to seizure of the handguns is somewhat academic as the guns were not entered into evidence against her. However, we understand her to press this objection to bolster her allegations of the generally excessive nature of the search and seizure.

■ In this circuit, the test for the "plain view" exception is found in *United States v. Schire,* 586 F.2d 15 (7th Cir.1978). An item was in plain view and seizable without a warrant if, (1) after a lawful initial intrusion affording the plain view of the contested item, and (2) an inadvertent discovery of the item, (3) "the incriminating nature of the evidence was immediately apparent" without information other than that which the executing officers properly possessed before their search was completed. *Id.* at 17, 19, *quoted in McDonald,* at 1295; *see also United States v. Thomas,* 676 F.2d 239, 244 (7th Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 364 (1981). The first two requirements of lawful intrusion and inadvertent discovery are not contested here. As to the immediately apparent incriminating nature of the mail and papers found in the apartment, we noted in *McDonald* that as more misdirected mail, credit cards, drivers' licenses, money orders, and loan papers surfaced during the search, "[a] well-trained law enforcement officer, operating under a search warrant that contemplated the uncovering of a criminal cocaine scheme, would instinctively suspect these items to incriminate McDonald in some type of illegal conduct associated either with cocaine transactions or mail tampering." *McDonald,* at 1296. There we held that the

"immediately apparent" test was satisfied and the plain view exception applied.

■ Appellant here argues that because Detective Smith testified that he seized the portfolio contents without knowledge that they were stolen or related to any crime, the executing officers at the time of the search had but a "suspicion" that the papers were of an incriminating nature. Executing officers, however, need not *know* that items in plain view were stolen before they may act on the items' immediately apparent incriminating nature; a reasonable belief, using the probable cause formulation, is sufficient in the ordinary case. *Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 1542–43, 75 L.Ed.2d 502 (1983); *see also State v. Hubbard,* 215 Kan. 42, 523 P.2d 387 (1979). Although Detective Smith did not know that the papers represented criminal activity, he did testify that he seized the portfolio because he believed that the contents were stolen. This reasonable belief fulfilled the requirement for the plain view exception both in *McDonald* and in this case.

Appellant objects that the gold bar and gold coins were seized despite both being outside the scope of the search warrant and lacking any immediately apparent incriminating nature. We agree with Judge Leighton that if the police took the gold at McDonald's request, *see supra* note 1, when the results of the subsequent investigation linked the gold to a fraudulent scheme, the police then could seize the gold permanently. *See Reed,* slip op. at 9–10.

■ Even if the police confiscated the gold without consent, seizure of the gold was justified because a logical nexus existed between the gold, not named in the warrant, and either the named cocaine or the vast amount of personal papers of others found in the apartment. Aside from his policy of taking inventory of valuable items, Detective Smith apparently seized the gold bar to "check" it. Police suspecting a cocaine dealing operation reasonably could surmise that the gold represented the proceeds of such an operation, or that it

was the fruit of another illegal activity. *See United States v. Jefferson,* 714 F.2d 689, 694–95 (7th Cir.1983) (search warrant for drugs; furs, jewelry, and firearms properly seized).

Detective Smith also testified that the executing officers seized the guns to check out their serial numbers after McDonald failed to produce evidence of gun registration, although Smith did not recall whether in this instance he asked McDonald for a registration card. Seizure of the guns did not exceed the scope of a valid search, as police reasonably could believe that the guns were involved in cocaine dealing or other illegal activity evidenced by the items discovered during the search. *See id.*

### V.

We affirm the convictions of appellant Reed.