NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 1, 2007
Decided July 10, 2007

**Before**

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 06-3663

UNITED STATES OF AMERICA,
       *Plaintiff-Appellant,*

   *v.*

ALAN K. KLEBIG,
       *Defendant-Appellee.*

Appeal from the United States
District Court for the Eastern
District of Wisconsin

No. 06 CR 64

**Charles N. Clevert**, **Jr.,** *Judge.*

## O R D E R

The government indicted Alan Klebig in a two-count indictment, charging him with possession of an unregistered firearm and possession of an unregistered firearm silencer. Klebig filed a motion to suppress the firearm and the silencer. The district court granted Klebig's motion to suppress and the government appeals. We reverse and remand.

I.

Good fences make good neighbors. But apparently no fence was tall enough for Alan Klebig. According to police, Klebig had it out for his 81-year-old neighbor, Doris Gillis, believing she had reported him to the city for various property violations, resulting in the Watertown, Wisconsin Building Inspection Department issuing Klebig thirty-three citations, totaling over $5,000. Gillis believed that in retaliation Klebig damaged her home, yard, and personal property from April 2005 to October 2005. For instance, on April 20, Gillis found a white powdery substance dumped on her lawn. When a police officer touched the substance, it burned his hand, and it also burned through his leather gloves. Gillis also told police in early May that someone had damaged her lawn and plants with an unknown chemical substance. In July, someone drove from Klebig's driveway over Gillis's grass and onto her driveway, leaving an oil spill. Also in July, Gillis discovered a white powdery substance around the gas tank of her lawn mower and the powder had corroded some of the aluminum on the gas tank cover. Then, in September, officers obtained more solid evidence connecting Klebig to the sabotage: On September 11, a surveillance camera set up by Gillis recorded a substance being sprayed across the fence line from Klebig's property onto Gillis's property. The substance damaged the paint on the siding of Gillis's house and destroyed a motion light. Later in October, Gillis's son reported that someone had also come to his house and poured motor oil on his front walk and driveway and that he had discovered several dead spots on his lawn, where he had found liquid and pieces of broken balloons.

Based on this evidence, on October 18, 2005, police sought a search warrant for Klebig's home. Detective Kathy Selk contacted the local District Attorney's office, providing the office with information concerning the investigation of Klebig, including the above incidents and the fact that a sample of the white powder that caused damage to Gillis's residence had been analyzed by the Wisconsin State Crime Lab and had been found to be "an unknown acid." In response, the District Attorney's office drafted a search warrant, which was later approved by a state court judge. The search warrant permitted law enforcement officers to search Klebig's residence, garage, and shed, and to seize: "Any chemicals, containers containing residue of chemicals, any oil and containers containing residue of oil, and anything that could be used to spray chemicals."

Four Watertown police detectives executed the warrant that same day. They searched Klebig's entire house, including drawers, closets, and under beds. The officers seized a wide array of items covered by the warrant, including several containers of various types of acids, such as phosphoric acid, muriatic acid, and

hydrochloric acid.[1]  They also seized several cleaning products that contained hydrochloric acid.  The officers, however, also seized other items found during the search, some of which were illegal (marijuana, a .22 caliber rifle fitted with a home-made silencer, a sawed-off rifle, and a fake bomb) and others of which were not, such as sheets of paper containing Klebig's signature, an insurance form that had written on it the titles of several movies, and (bizarrely) a dead mink wrapped in aluminum foil found in a freezer.

The United States later charged Klebig with possession of an unregistered firearm and possession of an unregistered firearm silencer, in violation of 26 U.S.C. §§ 5861(d) and 5871. Klebig moved to suppress the evidence obtained during the search of his house, arguing that the police lacked probable cause and that the warrant did not describe with particularity the items to be seized.  A magistrate judge concluded that the government had probable cause to believe that Klebig had used chemicals to damage his neighbor's property, but concluded that the warrant did not satisfy the Fourth Amendment's "particularity" requirement because it permitted the seizure of "any chemicals" and "any oil" in the house, which would extend to "[c]ountless personal hygiene items, ordinary household cleaning supplies, detergents, drugs, and even many foods and baking supplies" along with "oil of the motor, olive, baby, or countless other varieties."  The magistrate judge also rejected the *Leon* good-faith exception, concluding that no reasonable officer would believe that a search warrant requiring the seizure of "any chemicals" or "any oil" was valid.  *See United States v. Leon,* 468 U.S. 897, 926 (1984).  The magistrate judge then concluded that while the police discovered the two rifles in plain view, the weapons and the silencer should be suppressed "[b]ecause the officers' presence was pursuant to a plainly facially defective search warrant, [and thus] the officers were not in a lawful position to discover these firearms and therefore the firearms were not properly seized."  The magistrate judge further concluded that although "ordinarily the proportional remedy when police officers exceed the scope of a search warrant is the suppression of only the evidence seized that was beyond the scope of the warrant," that limited suppression would be inappropriate here because the search degenerated into a "general search."  The district court adopted the magistrate judge's recommendation as its own decision, and suppressed the sawed-off rifle and firearm silencer.  The government appeals.

---

[1]  This was not the first time officers discovered chemicals at Klebig's home:  Four years earlier, Klebig's house burned down, and police investigating the fire believed it was caused by chemicals stored in his house.

II.

 The Fourth Amendment requires a warrant to describe with "particular[ity] . . . the place to be searched and the persons or things to be seized."  U.S. Const. amend. IV.  In this case, the district court held that the search warrant was invalid because the directive to seize "any oil" and "any chemicals" lacked particularity. Whether a warrant satisfies the particularity requirement of the Fourth Amendment is a question of law, which we review de novo.  *United States v. Vitek Supply Corp.*, 144 F.3d 476, 480 (7th Cir. 1998).

 On appeal, the government does not challenge the district court's conclusion that the directive to seize "any oil" lacks particularity.  Rather, the government argues that the "any chemicals" description in the warrant was sufficiently particular so as to satisfy the Fourth Amendment and that because this portion of the warrant was valid and severable from the overbroad category of "any oil," the officers' search was constitutional.  The government then maintains that because the search was constitutional, the illegal firearm and silencer, discovered in plain view during the search for chemicals, are admissible.

 We first consider whether the "any chemicals" description satisfied the particularity requirement of the Fourth Amendment.  "In practice, courts have . . . demanded that the executing officers be able to identify the things to be seized with reasonable certainty and that the warrant description must be as particular as circumstances permit."  *United States v. Jones*, 54 F.3d 1285, 1290 (7th Cir. 1995) (internal quotation omitted).  However, "[i]f detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized." *United States v. Hall*, 142 F.3d 988, 996 (7th Cir. 1998).  In this case, the officers did not know exactly what chemicals Klebig had used to sabotage his neighbor's house.  Some of the chemicals were liquid—for instance, the chemicals sprayed over the fence on the house—while others were powder, like the white powder found on the lawn mower.  The magistrate judge, in its recommendation adopted by the district court, believed that "caustic chemicals" was a more apt description. Without that limitation, the judge concluded that the "any chemicals" category would justify the seizure of  "the sodium chloride in the salt shaker" and the "acetylsalicylic acid (aspirin) in the medicine cabinet."  However, contrary to the magistrate judge's analysis, a reasonable officer would not read the "any chemicals" category as justifying the seizure of anything that could be expressed with a chemical name.  Nor does it seem that the adjective "caustic" would add much to the meaning of the warrant, given the unique circumstances of this case, namely that many household chemicals, if misused, could inflict damage to lawns or paint.

Since a detailed particularity was impossible in this case, the generic language "any chemicals" was therefore sufficient for purposes of the Fourth Amendment.

Alternatively, even if the "any chemicals" language did not satisfy the particularity requirement of the Fourth Amendment, the seized evidence is admissible if the officers relied on the warrant in good faith. *See Jones v. Wilhelm*, 425 F.3d 455, 464 (7th Cir. 2005) ("Even if a warrant is ultimately found to be unsupported by probable cause or lacking in particularity, searches conducted pursuant to the warrant may be valid under the good-faith exception set forth in *United States v. Leon,* 468 U.S. 897, 926 . . . . (1984)"). Seeking a search warrant is prima facie evidence that a police officer is acting in good faith. *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005) To rebut this presumption of good faith, Klebig must show that:

> (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.

*United States v. Harju*, 466 F.3d 602, 607 (7th Cir. 2006) (internal quotation omitted).

Klebig does not identify a materially similar warrant that has been held lacking in particularity, nor is the warrant in this case so plainly deficient that a reasonably well-trained officer would have known that the warrant lacked particularity.  In fact, in this case, the District Attorney's office prepared the search warrant that was approved by a state court judge.  Under these circumstances, even if "any chemicals" was lacking in particularity to satisfy the Fourth Amendment, we conclude that the officers executing the warrant could have relied on that warrant in good faith.

Having concluded that the "any chemicals" description satisfied the particularity requirement of the Fourth Amendment, the question then becomes whether the valid portion of the search warrant is severable from the authorization

to seize "any oil," which the government conceded was overbroad.[2] We addressed this issue in *United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984). In that case, the defendant argued that a warrant that allowed officers to seize cocaine and proof of residency was lacking in particularity. After holding that the "proof of residency" language, in conjunction with a search for other named contraband, was sufficiently narrow for constitutional purposes, this court added:

> Even if "proof of residency" as the object of a search were vague and overbroad, however, only that much of the June 5, 1979, warrant would fail. The search for cocaine would remain valid as stated with sufficient particularity and severable from any invalid search. While a search for "proof of residency" may have sparked the officers' interest in the portfolio full of envelopes and papers, the search for cocaine equally could have prompted a look into the portfolio. A search for drugs justifies entry into containers where the drugs would fit and might reasonably be found. . . . Because the search for cocaine was lawful, seizure of the other items may be analyzed under the plain view exception to the warrant requirement and need not be justified under the "proof of residency" part of the search warrant.

*Id.* at 342-43.

Similarly, in this case, even with the government's concession that the "any oil" language was overbroad and lacking in specificity, the search for "any

---

[2] Klebig claims that the government waived its "severability" argument that the evidence was admissible because the search for "any chemicals" was valid, even if the search for "any oil" was not. Before the district court, the government argued that the warrant was valid as to both the "any chemicals" and "any oil" description. On appeal, although the government presents a narrower argument than that made before the district court, the government also argued to the district court that the "any chemicals" description was sufficiently particular. The government also asserted before the district court that items legally seized under the valid warrant "would remain valid as stated with sufficient particularity and severable from any invalid search . . . ." In making that argument to the district court, the government had maintained that the entire warrant was valid, while now the government only maintains that the "any chemicals" portion of the warrant is valid. Nonetheless, the broader arguments were presented to the district court and, therefore, the government has not waived this argument. *See In re Udell*, 18 F.3d 403, 406 (7th Cir. 1994) (concluding that there was no waiver because "at one time or another, the substance of all of the [appellant's] present argument [was] subsumed in the presentation to the district court").

chemicals" remains valid, as it was stated with sufficient particularity and severable from any invalid search.[3]  *See id.*  Thus, the officers were legally entitled to be inside Klebig's house and to search in areas where chemicals could be stored. This included under the bed and in the closet, which is where the officers discovered the illegal firearm and silencer.  Because the officers were legally entitled to search under the bed and in the closet and because the illegality of the firearm and silencer was readily apparent, the plain view doctrine justified their seizure.  *See Horton v. California*, 496 U.S. 128, 136-37 (1990) (holding that the plain view doctrine provides for the admissibility of evidence seized if the officer was legally entitled to search in the area where the contraband was found; the evidence was in plain view; and the incriminating character of evidence seized was immediately apparent).[4]

Klebig responds, quoting from *Hessel v. O'Hearn*, 977 F.2d 299, 302 (7th Cir. 1992), that the "[f]lagrant disregard for the terms of the warrant transform[ed] it into a general warrant, which the Fourth Amendment forbids."  *Hessel*, 977 F.2d at 302.  However, as this court explained in *United States v. Buckley*, 4 F.3d 552, 557-58 (7th Cir. 1993):

> Even if we were to find that the officers exceeded the scope of the warrant, the defendants would not succeed on [their motion to dismiss].  They argue specifically that certain items such as jewelry, a telephone book and a vehicle title exceeded the scope of the warrant.  They claim these "errors" would be enough to suppress the primary evidence against them, namely the cocaine and marijuana plants. . . . If the defendants in this case wish for suppression of all of the evidence, they must assert that all of the evidence was beyond

---

[3]  Klebig argues that the severability doctrine should only apply in limited circumstances, citing decisions from other circuits where the courts considered whether the valid portions make up the "greater part of the warrant" and whether "[a] warrant's invalid portions, though numerically fewer than the valid portions, may be so broad and invasive that they contaminate the whole warrant." *United States v. Sells*, 463 F.3d 1148, 1159-60 (10th Cir. 2006).  We need not decide whether to adopt a more restrictive severance standard in this case because a majority of the warrant was properly particularized (i.e., the "any chemicals," "containers containing residue of chemicals," and "anything that could be used to spray chemicals") and the invalid portion ("any oil and containers containing residue of oil") did not allow for a broader or more invasive search than the valid portion of the warrant.

[4]  On appeal, Klebig does not argue that the incriminating nature of the rifle and silencer was not readily apparent.

the scope of the warrant.  The seizure of uncontested evidence remains valid and is severable from any invalid search.

Similarly, in this case, even though the officers exceeded the scope of the warrant and improperly seized some evidence, that does not make the evidence of the illegal rifle and silencer, which were legally seized, inadmissible.  Accordingly, the district court erred in granting Klebig's motion to suppress.

III.

Given the circumstances of this case, the warrant's authorization to seize "any chemicals" satisfied the Fourth Amendment's particularity requirement. Accordingly, the officers were legally entitled to search Klebig's house, including inside the closets and under the bed, as chemicals could have been hidden there. While looking for chemicals in those places, the officers also found the sawed-off rifle and the unregistered silencer.  The plain view doctrine permitted the seizure of these items, and although the officers exceeded the scope of the warrant in other respects, that excess does not taint the properly seized evidence.  Accordingly, the district court erred in granting Klebig's motion to suppress.  We REVERSE and REMAND.